This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41773**

**JENNA STREHLOW,**

      Petitioner-Appellant,

v.

**LABAN STREHLOW,**

      Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**David P. Reeb, Jr., District Court Judge**

Eric D. Dixon, Attorney and Counselor at Law, P.A.
Eric D. Dixon
Portales, NM

for Appellant

Harmon Barnett & Morris, P.C.
Jared Alan Morris
Clovis, NM

for Appellee

## MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Petitioner Jenna Strehlow (Mother) appeals the district court's order granting shared custody of Mother's and Respondent Laban Stehlow's (Father) Child. In this Court's notice of proposed disposition, we proposed to summarily affirm. Mother filed a memorandum in opposition, which we have duly considered. Remaining unpersuaded, we affirm.

**{2}** Our notice proposed to affirm based on our suggestion that a showing of a substantial and material change in circumstances was not required because the "temporary child custody order" that created a "timesharing schedule" specifically contemplated future action. *See Hough v. Brooks*, 2017-NMCA-050, ¶¶ 24-25, 399 P.3d 387 (acknowledging that an interim order may not require a showing of a substantial and material change in circumstances if it is temporary in nature or subject to change). [CN 3-4] In her memorandum in opposition, Mother continues to assert that the temporary child custody order is an existing custody arrangement requiring that a substantial and material change in circumstances exist for joint custody to be awarded. [MIO 5] *See* NMSA 1978, § 40-4-9.1(A) (1999). In making this assertion, Mother relies on language from *Hough* that indicates an existing custody arrangement need not be based on a final order. 2017-NMCA-050, ¶ 22. However, *Hough* also emphasized the importance of the particular facts in these types of cases, and specified that its decision turned on "the specific and unique circumstances" of the case, reasoning that "nothing in the stipulated interim order establish[ed] that the custody arrangement was temporary or subject to change." *Id.* ¶¶ 24-25. Those are not the circumstances that exist in this case.

**{3}** Here, the order was clearly identified as "temporary," stated that its provisions were entered "pending final hearing on the merits," [1 RP 219] and made no finding regarding the best interests of Child. *See Black's Law Dictionary* (11th ed. 2019) (defining "pending" as remaining undecided or awaiting decision). Furthermore, the facts cited in the memorandum in opposition demonstrate that the temporary order was a written representation of the agreement that the parties stipulated to during mediation and that the district court approved. [MIO 5] The district court explicitly declined to consider the merits of the case prior to entering the temporary order, and specifically contemplated the merits hearing taking place in the future. [1 RP 83] Accordingly, the temporary order does not amount to a "durable custody arrangement" requiring findings of a substantial and material change in circumstances, and the district court therefore did not err by omitting a finding of a substantial and material change in circumstances before awarding shared physical custody.

**{4}** Throughout the memorandum in opposition, Mother also continues to assert that the district court's findings were not supported by substantial evidence. [MIO 8-9, 14] In reviewing this assertion of error, "we do not reweigh the evidence but instead decide whether each challenged finding was supported by substantial evidence, indulging every reasonable inference in favor of the district court's disposition." *Autrey v. Autrey*, 2022-NMCA-042, ¶ 9, 516 P.3d 207; *see also Sunnyland Farms, Inc. v. Cent. N.M. Elec. Co-op., Inc.*, 2013-NMSC-017, ¶ 37, 301 P.3d 387 ("When there is a conflict in the testimony, we defer to the trier of fact." (alteration, internal quotation marks, and citation omitted)). "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *N.M. Tax'n & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 20, 336 P.3d 436 (internal quotation marks and citation omitted).

**{5}** The district court heard testimony from Mother, Mother's boyfriend, and Father relating to each parent's method of caring for Child, employment, housing, family, and day-to-day life. As noted in our proposed disposition, we do not reweigh the testimony presented to the district court, and the district court found Father's testimony to be "tremendously more credible than [Mother's] testimony." [2 RP 416; CN 7] In her memorandum in opposition, Mother's argument amounts to a request that this Court reweigh the testimony presented to the district court. For instance, Mother asserts that there was no substantial evidence to support the district court's determination that Mother's work schedule "is busy and that she oftentimes cannot leave the home while she is working" as well as that her schedule "is not as flexible as she portrayed." [MIO 14, 16; 2 RP 414, 416] Mother also acknowledges, however, that she testified to working three jobs [MIO 14], that Friday pickups with Father were "kind of hard" because she was still working at four in the afternoon [MIO 15], and that she has had to work in the evenings on occasion [MIO 15]. From this testimony, the district court could reasonably find that Mother has a busy work schedule and make findings regarding the functional implications of her work schedule. *See State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 12, 329 P.3d 658 ("Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." (internal quotation marks and citation omitted)).

**{6}** In addition, Mother asserts that there was no substantial evidence to support the district court's findings that characterized Mother's lifestyle as "chaotic at best and not entirely well-suited for raising a three-year-old child" and that expressed doubt that Mother "could provide a relatively stable home" for Child if Mother's boyfriend were to leave the relationship. [MIO 12] As stated in our proposed disposition, however, the district court made these findings after receiving testimony from Mother regarding her employment, day-to-day life, and family and from Mother's boyfriend regarding his employment and family. [CN 8; 2 RP 364-371] It also heard testimony from Father who expressed his concerns about Mother's circumstances and the influence others have on Child. [2 RP 373-4] We note that "[t]he testimony of a single witness constitutes substantial evidence if it is credited by the district court," as was Father's testimony here. *See Autrey*, 2022-NMCA-042, ¶ 17.

**{7}** Mother also asserts that the district court's finding that Mother unilaterally enrolled Child in two different schools during the pendency of this case is not supported by substantial evidence because the testimony "does not establish that [Mother] kept [preschool] enrollment from [Father]." [MIO 8, 10; 2 RP 414] The testimony highlighted in Mother's memorandum in opposition indicates Mother informed Father once Child had, to some extent, been enrolled in two different preschools, but does not indicate Father expressed his opinion on those enrollments prior to them taking place. [MIO 9] Rather, Father testified that he wanted Child to go to a different preschool than the two Mother had chosen. [*Id.*] Again, such evidence is adequate to support the district court's finding. *See Autrey*, 2022-NMCA-042, ¶ 17; *see also Unilateral Act, Black's Law Dictionary* (11th ed. 2019) ("An act in which there is only one party whose will operates."). Given our standard of review and our obligation to defer to the trier of fact and indulge in every reasonable inference in support of the district court's decision, we

decline Mother's invitation reweigh the evidence. *See Autrey*, 2022-NMCA-042, ¶ 9; *Sunnyland Farms, Inc.*, 2013-NMSC-017, ¶ 37.

**{8}** Mother also argues that for this Court "[t]o give any weight to the district court's credibility determinations made on a telephone line is grossly unfair . . . as a matter of public policy." [MIO 17] Mother clarifies that she "is not appealing that the merits hearing was conducted by telephone," but insists that because an appellate court can hear an inflection of voice just as readily as the district court, the district court's findings regarding Father's credibility "fail as a matter of law." [*Id.*] Mother has not, however, cited any authority to support this assertion, or presented any authority to suggest this Court may—or should—depart from established precedent requiring that deference be given to the district court's factual determinations. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). "It is the sole responsibility of the trier of fact to weigh the testimony, determine the credibility of the witnesses, reconcile inconsistencies, and determine where the truth lies, and we, as the reviewing court, do not weigh the credibility of live witnesses." *Casias Trucking*, 2014-NMCA-099, ¶ 23 (alteration, internal quotation marks, and citation omitted).

**{9}** Mother also asserts that the district court failed to "properly or meaningfully address the upheaval in [Child's] life by the change in the existing visitation schedule that had existed for over a year" and cites to Section 40-4-9(A)(4) (identifying "the child's adjustment to his [or her] home, school and community" as a factor to be considered in determining the best interests of the child). [MIO 18] As we noted in our proposed disposition, the district court is vested with considerable discretion in determining the best interests of Child, and it need not make point-by-point findings on each statutory factor so long as the order "sufficiently tracks the factors, indicating that the [district] court considered them in making its decision." [CN 7-8] *See Thomas v. Thomas*, 1999-NMCA-135, ¶ 16, 128 N.M. 177, 991 P.2d 7 (finding no abuse of discretion where the district court's order "indicate[d] . . . concern[] about the emotional well-being of the children and that the children had close relationships with both parents, each of whom was able to take care of the children"); *Schuermann v. Schuermann*, 1980-NMSC-027, ¶ 8, 94 N.M. 81, 607 P.2d 619. We note that the district court's custody order provides for Child to remain enrolled in her current preschool through the remainder of the school year and if changing schools, she switch at the start of the next school year. [2 RP 433] As noted above and in our proposed disposition, the district court also heard testimony and made findings relevant to Child's home with each parent. [CN 8-9] Based on the foregoing, we conclude that the district court considered Child's best interests when awarding the parties shared physical custody. *See Thomas*, 1999-NMCA-135, ¶ 16.

**{10}** We also note that our notice of proposed disposition declined to address Mother's assertion that the district court's final custody determination was barred by issue preclusion, suggesting that Mother had not preserved that issue for appeal. [CN 5] *See Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, the party must specifically point out where, in the record,

the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue."). In her memorandum in opposition, Mother responds by summarizing the testimony proffered to the district court [MIO 6-12], without responding to our proposed disposition by identifying where in the record she preserved her issue preclusion argument or arguing that her failure to preserve the argument does not preclude review. Accordingly, Mother has failed to demonstrate error in this regard. *See Taylor v. Van Winkle's IGA Farmer's Mkt.*, 1996-NMCA-111, ¶ 5, 122 N.M. 486, 927 P.2d 41 (recognizing that issues raised in a docketing statement, but not contested in a memorandum in opposition are abandoned); *State v. Mondragon*, 1988-NMCA-027, ¶ 10, 107 N.M. 421, 759 P.2d 1003 (stating that "[a] party responding to a summary calendar notice must come forward and specifically point out errors of law and fact" and that the repetition of earlier arguments does not fulfill this requirement), *superseded by statute on other grounds as stated in State v. Harris*, 2013-NMCA-031, ¶ 3, 297 P.3d 374.

**{11}**    Mother has not otherwise asserted any fact, law, or argument in her memorandum in opposition that persuades us that our notice of proposed disposition was erroneous. *See Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683 ("Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law."). Accordingly, for the reasons stated in our notice of proposed disposition and herein, we affirm the district court's order awarding shared physical custody of Child.

**{12}    IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**KATHERINE A. WRAY, Judge**