785 P.2d 743

**Michael Patrick NORMAND and Andrew James Normand, minors, By and Through Clyde P. NORMAND, next friend, and Genevieve J. Normand, his wife, Petitioners–Appellees,**

v.

**Andralene RAY and James Ray, Respondents–Appellants.**

**No. 18434.**

Supreme Court of New Mexico.

Jan. 18, 1990.

---

Anthony F. Avallone, Glenn B. Neumeyer, Las Cruces, for appellants.

Ben A. Longwill, Las Cruces, for appellees.

## OPINION

DONNELLY, Judge.

Maternal grandparents appeal from an order of the district court granting custody of their two grandchildren to the father and stepmother of the children. The grandparents raise nine points on appeal which we consolidate and discuss as follows: (1) whether the trial court abused its discretion in the hearing following remand; (2) whether the trial court's order entered after remand exceeded the court's jurisdiction; (3) whether the trial court erred in rejecting the findings of fact submitted by grandparents; and (4) whether the findings of fact adopted by the trial court were supported by substantial evidence. We affirm the order of the trial court. During the pendency of this appeal, Michael Normand reached the age of majority; thus, we dismiss as moot, grandparents' appeal concerning the custody of Michael. *See Romine v. Romine,* 100 N.M. 403, 404, 671 P.2d 651, 652 (1983).

This is the second appeal to this court involving the custody of the children. *See Normand v. Ray,* 107 N.M. 346, 758 P.2d 296 (1988). Appellee Clyde Normand (father) is the natural father of Michael Patrick Normand, born December 17, 1971, and Andrew James Normand, born September 29, 1974. The father was divorced in Texas from Sharon Normand, the children's mother, in 1974; the divorce decree awarded custody of the children to the mother. In 1975, custody of the children was transferred by the mother to the grandmother, Andralene Ray. Thereafter, in 1978, the father petitioned the Texas

court for custody of the children; grandparents contested the transfer of custody. Following a jury trial, the Texas court ordered custody of the children be transferred to the father.

In contravention of the Texas order changing custody of the children, the grandparents moved with the children to another city without informing the father and kept their whereabouts secret. In 1985, grandparents initiated adoption proceedings in New Mexico and did not inform the trial court that the Texas decree had awarded custody of the children to the father. Grandparents told the court that the father had abandoned the children and could not be located. Acting on the statements of the grandparents, the New Mexico court entered an order terminating the father's parental rights and granted a decree of adoption to the grandparents.

In 1986, the father married Genevieve Normand (stepmother). Thereafter, in 1987, the father discovered the location of the children in New Mexico and filed a petition for writ of habeas corpus seeking custody. Following a hearing, in September, 1987, the trial court granted the writ directing that custody of the children be surrendered to the father, finding that the 1978 Texas judgment placing custody of the children in the father was valid and enforceable and that the New Mexico decree of adoption was void because it had been fraudulently procured by grandparents. Following an appeal by grandparents, this court upheld the trial court's order granting the writ of habeas corpus and voided the decree of adoption. The opinion of this court, however, directed that the cause be remanded "with instructions to the trial court to hold a hearing to take evidence and enter an appropriate order to determine what custodial arrangement will be in the best interests of the minor children. In all other respects, the trial court judgment is affirmed." *Id.* at 349, 758 P.2d at 299.

Following entry of the mandate of this court and remand, the trial court held an evidentiary hearing and adopted findings of fact and conclusions of law. On March 20, 1989, the trial court entered an order determining among other things, that "the best interests of the two children would be served by continuing their custody with the [father and stepmother]," and that the grandparents "should be given reasonable rights of supervised visitation with both [children]."

## I. HEARING ON REMAND

Grandparents assert that in conducting the hearing after remand the trial court abused its discretion when it did not require physical presence of both children for an in-camera interview by the court pursuant to NMSA 1978, Section 40-4-9 (Repl. Pamp.1989). In view of our determination that grandparents' appeal is moot as to Michael Normand, we address the issue raised by grandparents as it relates to Andrew Normand, now age fifteen.

Section 40-4-9 provides in part, that in cases where a judgment or decree is entered awarding the custody of a minor:

(B) If the minor is fourteen years of age or older, the court shall consider the desires of the minor as to with whom he wishes to live before awarding custody of such minor.

(C) Whenever testimony is taken from the minor concerning his choice of custodian, the court shall hold a private hearing in his chambers. The judge shall have a court reporter in his chambers who shall transcribe the hearing; however, the court reporter shall not file a transcript unless an appeal is taken.

Although the provisions of Section 40-4-9 direct that the trial court shall consider the desires of a minor over fourteen years of age concerning custody, under the statute, the trial court is not conclusively bound to award custody according to such preference. *Merrill v. Merrill*, 82 N.M. 458, 460, 483 P.2d 932, 934 (1971); *Stone v. Stone*, 79 N.M. 351, 352, 443 P.2d 741, 742 (1968); *see also Schuermann v. Schuermann*, 94 N.M. 81, 607 P.2d 619 (1980). Instead, the controlling inquiry of the court in any child custody dispute involves a balancing of all relevant factors and determin-

ing the best interests of the child. *See Schuermann v. Schuermann.*

In *Merrill,* this court observed:

The prevailing and correct rule, concerning the proper weight to be given to the expressed wish of minors, whose custody is at issue, is that set forth in Annot. 4 A.L.R.3d 1396 at 1402 (1965), where it is stated that:

"* * * when a child is of sufficient age, intelligence, and discretion to exercise an enlightened judgment * * *."

their wishes concerning their own custody are a factor to be considered by the court in arriving at its conclusion on the issue, but it is in no sense controlling. (citation omitted).

*Id.* at 459–60, 483 P.2d at 933–34.

■ In proceedings involving an award of child custody, the trial court is vested with wide discretion, and the court's conclusion concerning the best interests of a child will not be overturned on appeal absent proof that the decision of the trial court amounted to a manifest abuse of discretion under the evidence. *Fitzsimmons v. Fitzsimmons,* 104 N.M. 420, 423, 722 P.2d 671, 674 (Ct.App.), *writ quashed,* 104 N.M. 378, 721 P.2d 1309 (1986).

Following this court's remand of the case to the trial court, the testimony of the two children was presented by deposition at the custody hearing. The deposition testimony of Andrew, taken in Las Cruces on December 27, 1988, indicated that he was fourteen years of age on September 29 and that he was living in California with his father, stepmother, stepbrother, stepsister, a half-sister, and his brother Michael. Andrew expressed love for his grandparents and somewhat mixed feelings concerning his father and stepmother. Andrew stated his preference was to live with his grandparents; he also testified that while living in Texas with his grandparents, they had not discussed with him the efforts of his father to obtain custody of the children, nor had his grandparents ever informed him, in any detail, of matters concerning his father.

After the issuance of the writ of habeas corpus in August, 1987, custody of the children was transferred to the father and

stepmother. Thereafter, the family moved to Germany where the father was serving in the United States Army. The family currently resides in California.

■ The evidence indicates that the children lived with their grandparents for over ten years after the grandparents intentionally defied the Texas child custody order. Considering the length of time that the children were separated from their father and the intentional action taken by the grandparents limiting any contact or exchange of meaningful information concerning the children's father for over ten years, it was not an abuse of discretion for the trial court to decline to follow Andrew's preference as to the award of custody and in ascertaining the best interests of the children. In determining that custody of Andrew should remain with his father and stepmother, the trial court also found that the grandparents should be permitted visitation.

Examination of the record indicates that the depositions of both children were admitted into evidence and considered by the trial court. There is no evidence that the children's preferences as to custody were not freely given and that the depositions were not sensitively conducted.

■ Grandparents argue that the trial court erred in denying their motion to require the attendance of the children at the hearing. Grandparents contend that it is mandatory under Section 40–4–9(C) that the court conduct an in-camera hearing in order to ascertain the desires and feelings of the children concerning the award of custody. Although Section 40–4–9(C) provides that in custody proceedings concerning a minor's choice of custodian "the court shall hold a private hearing in his chambers" whenever testimony is taken from a minor, this provision does not preclude presentation of deposition testimony by a child. The language of Section 40–4–9 evinces a legislative directive that rather than subject children to adversarial proceedings in open court, they should be interviewed in chambers concerning their preferences as to custody. The statute's

clear import is to minimize emotional trauma affecting children in custody proceedings and to protect the child from the tug and pull of competing custodial interests. We do not deem the statute to be mandatory; rather, we conclude the holding of such in-camera hearing is a matter entrusted to the sound discretion of the trial court. Because grandparents were permitted to depose both boys and to elicit testimony concerning their preferences as to the award of custody, and there is no showing this testimony was inhibited or not freely given, we find no error in the trial court's denial of the motion for an in-camera hearing.

■ Grandparents also contend that the trial court erred in not permitting them to have a clinical psychologist evaluate the boys concerning their placement and their best interests. However, the trial court did not prevent the grandparents from presenting a psychologist's expert testimony concerning the best interests of the children. Instead, the court expressly stated that grandparents could utilize an expert whose testimony relied on information obtained from the children's depositions and who could present testimony in the form of opinion based upon hypothetical questions.

Although we agree with grandparents that testing and evaluating the children would have been preferable, grandparents have not shown that the alternatives authorized by the court unfairly restricted the presentation of expert testimony or resulted in any actual prejudice. Grandparents presented the testimony of Dr. Howard Daniels, a psychologist, who testified that the children loved their grandparents and had closely bonded with them. His stated opinion was that the best interests of the children would be to permit them to reside with the grandparents.

■ In determining the best interests of the children in child custody proceedings, the trial court is not limited to a consideration of the children's expressed preferences, but may also consider, among other things, the children's interaction and interrelationship with their parents and siblings, as well as the children's adjustment to their home, school and community and the mental and physical health of the respective parties. Section 40-4-9(A). The court must evaluate these factors in light of the children's age, the developing relationship between the children and their parents, and how well the child is developing physically, mentally and emotionally. In determining the best interests of the children, the trial court could also properly consider the grandparents' previous history of lack of candor in the adoption proceedings and their prior disregard of the Texas court order concerning the transfer of custody of the children. *See Lopez v. Lopez,* 97 N.M. 332, 334, 639 P.2d 1186, 1188 (1981); *see also Alfieri v. Alfieri,* 105 N.M. 373, 379, 733 P.2d 4, 10 (Ct.App.1987); *see generally* Annotation, *Alienation of Child's Affections As Affecting Custody Award,* 32 A.L.R.2d 1005 (1953); Annotation, *Award of Custody of Child Where Contest is Between Child's Mother and Grandparent,* 29 A.L.R.3d 366 (1989); Note, *A Limitation on Grandparental Rights in New Mexico: Christian Placement Service v. Gordon,* 17 N.M.L.Rev. 207 (1987).

Under the circumstances discussed above, we find no abuse of discretion by the trial court in its denial of the motion for an in-camera hearing requiring the boys to appear and testify in person nor in its denial of a psychologist testing and evaluating the boys at the custody hearing.

## II. PROCEEDINGS ON REMAND

Grandparents argue that the trial court exceeded its jurisdiction in conducting the hearing on remand and that the trial court erred in considering facts adduced at the habeas corpus proceeding conducted by the court. This court's mandate following the prior appeal from the order granting habeas corpus directed that the trial court hold a hearing, take evidence, and enter an appropriate order to determine what custodial arrangement would be in the best interests of the minor children.

■ On remand the trial court has only such jurisdiction with respect to an issue appealed as is conferred by the opinion and

mandate of the appellate court. *Hughes v. Hughes*, 101 N.M. 74, 75, 678 P.2d 702, 703 (1984); *Apodaca v. Unknown Heirs*, 98 N.M. 620, 624–25, 651 P.2d 1264, 1268–69 (1982). The opinion of this court detailed facts previously determined by the trial court and which this court found controlling on appeal.

Under the prior findings adopted by the trial court in the habeas corpus action, and as set forth in our prior opinion, the father filed suit against the grandparents in Texas seeking award of custody of the children. The findings adopted by the court included a determination that following trial a decree was entered awarding custody to the father; the grandparents left with the children without informing the father of their whereabouts; over the next few years the grandparents moved to several different cities hiding the children's location from their father; the father's efforts to locate the children were unsuccessful; grandparents filed proceedings to adopt the children in New Mexico and did not inform the New Mexico court of the 1978 Texas decree awarding custody of the children to the father; and grandparents informed the New Mexico court that the father had abandoned the children and that he could not be located. The prior opinion of this court determined that "[s]ubstantial evidence in the record supports the trial court's conclusion that the adoption judgment [secured by grandparents] was obtained through fraud." 107 N.M. at 348, 758 P.2d at 298.

In carrying out this court's mandate, the trial court's focus necessarily involved a determination as to the best interests of the children at the time of the hearing on mandate; the trial court, however, was not required to disregard evidence presented at the prior hearing and which this court relied upon in rendering its opinion on appeal. Although we agree that as a general rule custodial rights should be determined by current evidence, *Greene v. French*, 97 N.M. 493, 495, 641 P.2d 524, 526 (Ct.App. 1982), in view of the fact that the conduct of the grandparents over an extended period precluded any meaningful contact by the father with both boys during their formative years, the trial court could properly consider such facts, as well as the prior conduct of the grandparents in determining the best interests of the children.

The trial court did not exceed its jurisdiction following issuance of this court's mandate.

## III. DENIAL OF REQUESTED FINDINGS

Grandparents also assert that the trial court erred in refusing to adopt their requested findings of fact and that certain findings submitted by them were supported by uncontradicted evidence.

The requested findings of fact submitted by grandparents, among others, provided that the interaction and interrelationship between the children and grandparents was positive; that the children were happy during the time they were in the physical custody of grandparents; that the grandparents were good caretakers of the children; that the interaction and interrelationship between the children, the father and stepmother and step-siblings was not loving; that in the children's minds, grandparents are their parents; that after custody was awarded to the father and stepmother contact between the children and the grandparents was discouraged; that the children were required to care for their own physical needs; and that Andrew was unhappy in the present custodial setting.

It is not error for a trial court to refuse to adopt findings favorable to an unsuccessful party and that contradict other findings adopted by the trial court. *Cowan v. Chalamidas*, 98 N.M. 14, 16, 644 P.2d 528, 530 (1982). Moreover, the trial court need not adopt findings of fact touching on every material fact; it is sufficient if the findings of the trial court address those ultimate findings of fact necessary to support its decision. *Sanchez v. Sanchez*, 84 N.M. 498, 500, 505 P.2d 443, 445 (1973). "Ultimate facts" are those facts which are essential and determinative facts upon which the trial court's conclusions are based. *Goldie v. Yaker*, 78 N.M. 485, 488, 432 P.2d 841, 844 (1967).

In view of the actual finding adopted by the trial court that the best interest of Andrew would be to continue his custody with his father and stepmother, it was not error to refuse to adopt the findings of fact and conclusions of law submitted by grandparents.

## IV. SUFFICIENCY OF EVIDENCE

Lastly, grandparents challenge the sufficiency of evidence to support the findings of fact adopted by the trial court underlying the court's conclusion that the best interest of Andrew requires that he continue to reside with his father and stepmother.

Grandparents attack the findings of the trial court based upon their contentions that specific findings adopted by the court are irrelevant to its determination of the best interests of the boys, and that other findings entered by the court have no basis in the record or are not supported by substantial evidence.

▮ Findings 1 and 2, adopted by the trial court, found that during the time the boys were in the custody of the grandparents, from 1985 to 1987, the boys did not attend public school; instead, they were educated by grandparents who used materials supplied by a home study correspondence school. The court also found that "the value of this education is unknown." Grandparents argue these findings are contradicted by the record and relate to prior matters outside the relevant time-frame for determining the best interests of the children. We disagree. The depositions of both children indicated that they had been taught at home while residing with grandparents, that they were currently attending schools in California, and that generally their academic progress had improved during the time that they resided with their father and stepmother. The court's findings concerning the children's education were relevant and supported by evidence in the record. The fact that grandparents have testified that they would send the children to public school if custody were awarded to them did not render irrelevant the findings adopted by the court. The burden of showing that facts existing at the present time are materially different from those adduced at a former hearing rests upon the party making the claim. *Gulf States Equip. Co. v. Toombs*, 317 S.W.2d 554, 556 (Tex.Civ.App.1958).

The trial court also found that, based on the grandparents' past conduct, if custody of the children were awarded to the grandparents, the best educational interests of the children, or future compliance with court decrees could not be assured. Grandparents argue that there is no basis in the evidence to support these findings and that the trial court apparently relied upon evidence presented at the previous habeas corpus hearing as a predicate for such findings. On remand from this court, the plans of the parties concerning the future education of the children was a relevant inquiry. In evaluating this factor the trial court properly considered the adequacy of the education provided during the time the children were in the custody of the grandparents. Similarly, in considering the best interests of Andrew and in evaluating the probability that the grandparents would comply with future court decrees, the trial court could properly consider the grandparents' disregard for the Texas child custody decree and the grandparents' fraudulent procurement of the New Mexico adoption decree. In *Lopez*, this court recognized that a parent's demonstrated lack of cooperation and refusal to follow prior court orders concerning child visitation may, in appropriate cases, constitute grounds for change of custody. *Id.* at 334, 639 P.2d at 1188; *see also Alfieri v. Alfieri*, 105 N.M. at 379, 733 P.2d at 10.

The challenged findings were material and relevant to the trial court's determination of the best interests of Andrew.

Grandparents further challenge as unsupported by the evidence, the trial court's findings that the father and stepmother have provided appropriate housing or environment for the two boys, or that they are appropriate parents. The court's findings have support in the record. Among other evidence, the deposition testimony of both boys described their current home, school

participation, and the parenting practices of the father and stepmother. This evidence, together with the reasonable inferences properly drawn therefrom, constituted substantial evidence to support the trial court's findings.

Additionally, grandparents contend that the court abused its discretion in finding that Michael prefers to live in California with his father and stepmother and that Andrew prefers to live in New Mexico with grandparents; and that in light of the mixed wishes expressed by the children, it would not be beneficial to separate them. Under this point grandparents reassert their argument that the court erred in rejecting proposed findings of fact submitted by them and which were supported by uncontradicted testimony. In considering this argument, we are further mindful of the fact that the older son is now an adult.

In reviewing challenges to the findings of the trial court, a reviewing court does not reweigh evidence or determine the credibility of the witnesses, but ascertains whether the evidence, viewed in a light most favorable to the prevailing party, reveals the existence of substantial evidence to support the court's decision; if so, the decision must be affirmed. *Alfieri v. Alfieri*, 105 N.M. at 377, 733 P.2d at 8. Findings of fact are to be liberally construed so as to uphold the judgment of the trial court, and findings are sufficient if a fair consideration of all of them taken together justifies the judgment of the trial court. *State ex rel. Goodmans Office Furnishings, Inc. v. Page & Wirtz Constr. Co.*, 102 N.M. 22, 24, 690 P.2d 1016, 1018 (1984). Even where specific findings adopted by the trial court are shown to be erroneous, if they are unnecessary to support the judgment of the court and other valid material findings uphold the trial court's decision, the trial court's decision will not be overturned. *Specter v. Specter*, 85 N.M. 112, 114, 509 P.2d 879, 881 (1973). Moreover, in proceedings involving determination of the best interest of the children, the court may also consider the possible adverse effect of custody changes upon the children. *Seeley v. Jaramillo*, 104 N.M. 783, 786, 727 P.2d 91, 94 (Ct.App. 1986).

Here, the trial court adopted findings that petitioners were providing a beneficial environment for the children, that the scholastic performance of the children was improving while in the custody of appellees, and that the parenting provided by appellees was appropriate and beneficial. These ultimate findings were sufficient to support the trial court's order awarding custody.

We have reviewed the record and determine the trial court's findings and conclusions continuing custody in the father and stepmother are supported by substantial evidence and were not contrary to law.

The appeal of grandparents as to Michael Normand is dismissed as moot; in all other respects the judgment of the trial court is affirmed. Appellees are awarded their costs on appeal.

SOSA, C.J., and BACA, J., concur.